## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANDES CAPITAL FINANCING LLC and COEVOLUTION LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| | ) **CIVIL ACTION** |
| v. | ) |
| | ) **No. 21-1270-KHV** |
| CROSSED KEYS LLC, BRIAN WEAVER, JAE CHA, and TORCH RESEARCH LLC, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

On November 16, 2021, Andes Capital Financing LLC and Coevolution LLC filed suit against Crossed Keys LLC, Brian Weaver, Jae Cha and Torch Research LLC. Plaintiffs bring five causes of action under Delaware law: breach of contract, breach of fiduciary duty, conspiracy to breach fiduciary duty, unjust enrichment and fraud. This matter is before the Court on Defendants' Motion To Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6) (Doc. #14) filed January 26, 2022. For reasons stated below, the Court sustains defendants' motion in part.

## Legal Standard

In ruling on defendants' motions to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement for relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal,

556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019).  Plaintiffs bear the burden of framing their claim with enough factual matter to suggest they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556.  Plaintiffs make a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  Plaintiffs must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendants' liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Plaintiffs allege as follows:

Torch Research LLC is a Delaware limited liability company with its principal place of business in Leawood, Kansas.  Crossed Keys, a Kansas limited liability company, has a 90 per cent membership interest in Torch.  Andes Capital Financing LLC and Coevolution, Texas limited liability companies, own 8.67 and 1.33 per cent membership interests, respectively.  Brian Weaver

is a manager, board member and chief executive officer of Torch.  Weaver is also the owner and manager of Crossed Keys.  Jae Cha was an owner and member of Crossed Keys.[1]

Torch is a leading global artificial intelligence firm that uses machine learning to enable massively scaled, ultra-high performance data processing.  Recently, Torch announced that it had raised $30 million in a Series A funding.  Torch recently secured $27 million in tax incentives from the State of Kansas and planned to hire 100 additional employees with average salaries of more than $100,000 in 2021.  It plans to hire more than 500 additional employees in the next five years.  Torch's clients include Microsoft, H&R Block and General Electric.  It is moving into the government sector, where its technology has been deployed across more than a dozen federal agencies.

In 2017, Weaver and Cha traveled to Dallas County, Texas and requested capital from Andes Capital Financing LLC and Coevolution to create Torch.  On or around March 3, 2017, plaintiffs provided capital and they and Crossed Keys executed the Operating Agreement of Torch Research LLC, which established Torch.  The Delaware Limited Liability Company Act governs the agreement. Andres Ruzo, a member of Andes Capital Financing LLC, served as plaintiffs' representative and Chairman of the Board of Managers.

Under Section 2.5 of the operating agreement, any member had the right to inspect the company's books and records.  Section 4.5 limited the manager's personal liability for breach of fiduciary duties.  It specifically stated that no manager would be liable under a judgment, decree or order of a court, or in any other manner, for monetary damages for breach of fiduciary duty, except for liability for any acts or omissions which involved intentional misconduct, fraud or

---

[1]     Torch's website described Cha as "Co-Founder and Chief of Innovation" of Torch, and it stated that he was intimately involved in the direction and vision of Torch.

knowing violation of law or for a distribution, redemption or purchase of or with respect to a member's membership interest in violation of applicable law as a result of the willful or grossly negligent act or omission of such manager.

Section 4.6 stated that members who were not managers could not participate in day-to-day control of the company, transact business on behalf of the company or have any power to bind or obligate the company. Sections 5.4 and 5.5 prohibited transfer or assignment of any membership interests without the unanimous written consent of all members.  The operating agreement defined "transfer" as passage of a legal or equitable interest in a membership interest pursuant to sale, exchange, gift, assignment, pledge or other conveyance, disposition, or encumbrance and included the passage of any such by operation of law.

Section 4.10 of the operating agreement required that any individual who called a meeting give notice in writing, personally or by mail, to each member.  Members could waive notice in writing.  Members who owned a majority of share interests represented at a meeting constituted a quorum.  Section 4.11 stated that each member was entitled to one vote for each share interest, and the company could not make a capital expenditure exceeding $50,000 or amend the operating agreement without the affirmative vote of members holding all of the share interests.  Section 7.2 stated that a self-interested transaction would not be void or voidable if one of the following occurred: (1) the majority of disinterested members affirmed the decision after all material facts were disclosed and the members authorized the transaction in good faith; (2) 95 per cent of the members entitled to vote approved the transaction after all material facts were disclosed and the members authorized the transaction in good faith; or (3) the transaction was fair to the company.

Without plaintiffs' knowledge or consent, Weaver sought buyers to purchase Torch. Around June of 2019, Weaver engaged Deloitte Touche Tohmatsu Limited to provide services

related to defendants' attempts to market Torch.  Deloitte provided a report which valued Torch at more than $130 million and "estimate[d] that [Torch] shareholders could realize pre-tax proceeds of approximately $110.4 million while retaining a 20% ownership stake in the Company."  To low-ball plaintiffs, defendants engaged other business valuation companies that valued Torch at less than $10 million.  Before and after receiving the Deloitte report, defendants attempted to oust plaintiffs for a fraction of the value of their ten per cent membership interest.  Before the Deloitte estimate, Weaver made several requests to buy plaintiffs' shares for between $1,000,000 and $1,500,000.

Weaver asked plaintiffs to amend the operating agreement to remove the "unanimous consent" provisions that governed membership transfers and major transactions.  He also asked that plaintiffs approve the purchase of a private jet.  Plaintiffs refused both requests.

Once Torch became highly valuable, defendants began refusing to provide basic business information to plaintiffs.  Defendants refused to provide information about distributions, tax information and outstanding purchase offers.  After months of attempting to obtain business information, plaintiffs retained counsel to obtain the information.  On July 20, 2020, plaintiffs' counsel sent a comprehensive demand for access to books and records under Texas and Delaware law.  In this demand, plaintiffs' counsel asked that certain documents be provided electronically because of COVID-19.  Rather than complying with the request, defendants attempted to oust plaintiffs from the company.  On August 24, 2020, to protect their interest, plaintiffs informed defendants that pursuant to the operating agreement, Ruzo—as Chairman of the Board of Managers—would chair any properly called membership meeting.  Defendants, however, refused to recognize Ruzo as Chairman.

On or around September 21, 2020, plaintiffs sought and obtained a temporary restraining

order ("TRO") from the 101st Judicial District Court in Texas.  The TRO prevented Weaver and Crossed Keys from "directly or indirectly taking any actions that would result in any type of transfer of any membership interest of Torch Research LLC or any of its members."  Plaintiffs served defendants a copy of the TRO and again informed them that plaintiffs objected to any disposition of their membership interest.  Defendants remained steadfast in their effort to oust plaintiffs from Torch.

On or around September 28, 2020, defendants sent an electronic "Notice of Meeting in Connection with Proposed Merger" which purported to inform plaintiffs that a special meeting would be held on October 9, 2020.  The notice indicated an intention to "discuss and approve a proposed merger of Torch Research LLC . . . with and into Crossed Keys LLC . . . pursuant to which [plaintiffs'] Membership Interests will be cancelled."  Defendants intended to unilaterally dispose of plaintiffs' ownership interest in Torch by approving a "merger" of Torch and Crossed Keys.  The proposal was to merge Torch with its 90 per cent majority member, Crossed Keys, which Weaver and Cha owned.  The notice stated that plaintiffs would not receive any information or a "specified amount of cash" until immediately prior to the meeting.

On October 9, 2020, over plaintiffs' objections, defendants conducted a meeting.  Plaintiffs refused to participate and defendants did not provide them any information in advance.  Weaver presided over the special meeting, during which Crossed Keys, the 90 per cent member, approved a self-interested merger between itself and Torch.  Less than three hours later, at 11:30 a.m., defendants filed the merger documents with the Delaware Secretary of State.

Minutes before the meeting on October 9, defendants informed plaintiffs that they would receive $1,354,248, a sum which defendants had unilaterally decided to pay for plaintiffs' cancelled membership interests.  Defendants did not appoint any type of independent board or

committee to ensure fairness to the minority members.  Defendants' valuation robbed plaintiffs of more than $10,000,000.  Defendants then decided that they would pay the purchase price at a later time.  For each plaintiff, they executed a promissory note payable a year later, on October 9, 2021.

On November 16, 2021, plaintiffs filed suit against Crossed Keys, Weaver, Cha and Torch. Plaintiffs allege the following claims: (1) breach of contract, (2) breach of fiduciary duty, (3) conspiracy to breach fiduciary duty, (4) unjust enrichment and (5) fraud.

## Analysis

### I.      Breach Of Contract

Plaintiffs allege five breach of contract claims under the operating agreement.  Specifically, plaintiffs sue Crossed Keys, Weaver and Torch for: (1) breach of Section 2.5 by failing to let plaintiffs inspect Torch's books and records; (2) breach of Section 4.10 by serving plaintiffs an electronic meeting notice rather than personal or mail notice; (3) breach of Section 4.11 in making a capital expenditure over $50,000 without a vote of all members; (4) breach of Section 5.4 by transferring plaintiffs' share interests without the consent of all members; and (5) breach of Section 7.2 by effectuating a merger that was not fair to them or the company.  Defendants argue that plaintiffs do not state a plausible claim for breach of the operating agreement because (1) Torch, Weaver and Cha were not parties to the agreement and (2) plaintiffs have not stated a plausible claim for breach of Sections 2.5, 4.10, 4.11, 5.4 and 7.2 of the operating agreement by any defendant.

### A.      Whether Plaintiffs Sufficiently Plead A Breach Of Contract Claim Against Torch, Weaver and Cha

Defendants argue that plaintiffs do not state a claim against Torch, Weaver and Cha because they were not parties to the operating agreement.  Plaintiffs respond that under Section

18-101(9) of the Delaware Limited Liability Company Act, 6 Del. C. § 18-101(9), members, managers or the LLC are bound by an operating agreement even if they did not sign it.

Generally, under Delaware law, "only a party to a contract may be sued for breach of that contract." Allen v. El Paso Pipeline GP Co., L.L.C., 113 A.3d 167, 177–78 (Del. Ch. 2014). Section 18-101(9) of the Delaware LLC Act defines who is bound by an operating agreement, however, and states as follows: (1) "[a] member or manager of a limited liability company or an assignee of a limited liability company interest is bound by the limited liability company agreement whether or not the member or manager or assignee executes the limited liability company agreement" and (2) "[a] limited liability company is bound by its limited liability company agreement whether or not the limited liability company executes the limited liability company agreement."

Plaintiffs and Crossed Keys signed the Operating Agreement, but Torch, Weaver and Cha did not. Plaintiffs disclaim any breach of contract claim against Cha, but they argue that under Section 18-101(9) of the Delaware LLC Act, Torch (as LLC) and Weaver (as LLC member) are bound by the operating agreement. Because Section 18-101(9) states that the LLC and the members are bound by the operating agreement, the Court overrules defendants' motion as to Torch and Weaver and the motion is moot as to Cha.

B.   Whether Plaintiffs State Plausible Claims For Breach Of Sections 2.5, 4.10, 4.11, 5.4 And 7.2 Of The Operating Agreement

i.   Section 2.5

Section 2.5 provides that during usual business hours, members have the right to inspect the operating agreement, records, books of account, records of proceedings of the members and managers and the company's other books and records. Defendants argue that plaintiffs have not

sufficiently pled a breach of Section 2.5 because 6 Del. C. § 18-305(f) states that Delaware Chancery Court is the exclusive forum for any claim arising out of a duty to provide books and records. Plaintiffs' only response is that Section 2.5 of the operating agreement gives them the affirmative right to inspect Torch's books and records.

If a limited liability company refuses to permit a member to examine the requested records, the demanding manager may apply to the Court of Chancery to compel disclosure. 6 Del. C. § 18-305(f). The Delaware Court of Chancery is "vested with exclusive jurisdiction to determine whether or not the person seeking such information is entitled to the information sought." Id. Plaintiffs' allegations that defendants refused to produce Torch books and records state a plausible claim for relief—but not in this court. Plaintiffs do not address defendants' argument that plaintiffs' right to inspect cannot be pursued in federal district court. Thus, the Court sustains defendants' motion to dismiss plaintiffs' breach of contract claim under Section 2.5 of the operating agreement.

   **ii.  Section 4.10**

Section 4.10 provides that defendants must give proper written notice for a meeting either personally or by mail. Plaintiffs claim that defendants breached Section 4.10 because they served electronic notice of the meeting rather than serving it personally or through the mail. Defendants argue that plaintiffs have not pled a breach of Section 4.10 because (1) Delaware law does not require a meeting for a merger, (2) Delaware law does not require written notice and (3) plaintiffs received actual notice in the manner that their counsel acknowledged made the most practical sense in light of COVID-19.

Defendants cite Section 18-302(d) of the Delaware LLC Act, which states that unless otherwise provided in the operating agreement, LLC members may vote on any matter without a

meeting.  Section 4.10 of the operating agreement, however, provides that meetings must be properly noticed.  Once defendants decided to call a meeting, they were required to abide by Section 4.10.  Thus, even if Delaware law did not require a meeting, the operating agreement required proper notice when defendants decided to conduct a meeting.

Here, the operating agreement required written service either personally or by mail, but it did not expressly prohibit electronic delivery.  Under 6 Del. C. § 18-113(a)(1), "an electronic transmission is the equivalent of a written document."  Section 18-113(b) states that the operating agreement shall not limit the application of Section 113 unless the provision "expressly restricts one or more of the means of documenting an act or transaction, or of signing or delivering a document, permitted by subsection (a)."

The Delaware LLC Act allows electronic transmissions to serve as written documents.  The Court therefore dismisses plaintiffs' breach of contract claim under Section 4.10.

### iii.    Section 4.11

Section 4.11 of the operating agreement states that each member shall be entitled to one vote for each share interest and members cannot amend the operating agreement or make a capital expenditure in excess of $50,000 without putting the decision to a vote of each member.  Plaintiffs claim that defendants breached Section 4.11 because they made a capital expenditure of more than $50,000 without putting the decision to a vote of all members.  Defendants argue that plaintiffs have not pled a breach of Section 4.11 because the merger cannot reasonably be considered a "capital expenditure" under the operating agreement.

A capital expenditure is "an amount paid out for new or for permanent improvements or betterments made to increase the value of any property or estate."  Rogers v. U.S., 58 F. Supp. 2d 1235, 1246–47 (D. Kan. 1999).  When a capital asset is transferred to the owner in exchange for

value, the payment is a capital expenditure.  Woodward v. C.I.R., 397 U.S. 572, 579 n.8 (1970).

As a general rule, stock redemptions are characterized as capital transactions.  Rogers, 58 F. Supp.

2d at 1246.

Plaintiffs allege that after Torch merged with Crossed Keys, defendants cancelled their

interests in Torch and paid them $1,174,133.02 and $180,114.98 for their interests; that plaintiffs

did not vote on the transaction; that their interests are capital assets, which defendants now own;

and that their interests exceeded the $50,000 limit set in the operating agreement.  Plaintiffs

sufficiently allege a breach of the voting requirement in Section 4.11 of the operating agreement.[2]

### iv.     Section 5.4

Section 5.4 of the operating agreement provides that share interests may not be transferred

or assigned voluntarily or involuntarily without the unanimous written consent of the other

members of the company.  Plaintiffs claim that defendants breached Section 5.4 because they

transferred plaintiffs' share interests without the consent of all members.  Defendants argue that

plaintiffs have not pled a breach of Section 5.4 because the cancellation or termination of an

ownership interest is not a "transfer" under the operating agreement.  Plaintiffs respond that the

operating agreement clearly encompasses a party's loss of interests after a merger.

The operating agreement provides the definition of "transfer."  Under the agreement, a

transfer includes the sale, exchange or other conveyance of any interest by operation of law.  Under

Delaware law, the phrase "by operation of law" includes assignment through merger.  MTA

Canada Royalty Corp. v. Compania Minera Pangea, S.A. de C.V., No. CV N19C-11-228 AML,

---

[2]     Defendants argue that the definition of "capital expenditure" in the context of the Internal Revenue Code is not transferrable to the analysis of capital expenditure for the purposes of the operating agreement at issue in this case.  Other than a case from the Eastern District of Virginia which merely provides the Black's Law Dictionary definition of capital expenditure, they do not cite any authority that stock redemption is not considered a capital expenditure.

2020 WL 5554161, at *5 (Del. Super. Ct. Sept. 16, 2020).  Here, plaintiffs allege that without putting the transaction to a vote, defendants cancelled their interests after Crossed Keys and Torch merged.  Through the cancellation of their interests after the merger, defendants owned 100 per cent of Torch.  Plaintiffs have sufficiently alleged a "transfer" by operation of law as defined in the operating agreement and thus a breach of the voting requirement contained in Section 5.4.

       **v.**       **Section 7.2**

Section 7.2 of the operating agreement provides that a self-interested transaction will not be voidable if the majority of disinterested members affirm the decision, all material facts are disclosed to and voted upon by 95 per cent of the members entitled to vote or the transaction is fair to the company.  Plaintiffs claim that defendants breached Section 7.2 because the merger transaction was not fair to them or the company.  Defendants argue that Section 7.2 is a safe harbor provision against claims of self-dealing and does not impose obligations on the part of any defendant.

Delaware law does not require "that an LLC agreement use magic words, such as 'entire fairness' or 'fiduciary duties,'" to impose duties on the parties.  Gatz Properties, LLC v. Auriga Cap. Corp., 59 A.3d 1206, 1213 (Del. 2012).  Courts look to the language of the operating agreement to determine whether the "concept of fairness" is incorporated into the agreement.  Zimmerman v. Crothall, 62 A.3d 676, 703 (Del. Ch. 2013).

Section 7.2 does not impose an obligation on defendants or require any action or conduct.  H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129, 140 (Del Ch. 2003) (must allege contractual obligation to bring breach of contract claim).  As written, if plaintiffs seek to void the merger, Section 7.2 provides three methods of asserting an affirmative defense or safe harbor provision.  This Court will not create an obligation out of "an expressly exculpatory provision."  Fisk

Ventures, LLC v. Segal, No. CIV.A. 3017-CC, 2008 WL 1961156, at *9 (Del. Ch. May 7, 2008). Thus, the Court sustains defendants' motion to dismiss plaintiffs' breach of contract claim as to Section 7.2.

## II.    Breach Of Fiduciary Duty

Plaintiffs claim that Crossed Keys, Weaver and Cha breached their fiduciary duties by failing to disclose Torch's books and records and approving a merger that was unfair to plaintiffs. Defendants argue that plaintiffs do not state a plausible claim for breach of fiduciary duty because (1) only managers owe fiduciary duties and Torch, Crossed Keys and Cha were not managers; (2) the operating agreement eliminated liability for a breach of fiduciary duty by managers like Weaver; (3) Weaver did not owe a fiduciary duty to procure books and records; and (4) defendants did not owe a fiduciary duty with respect to the merger.

   A.    Whether Plaintiffs State Plausible Claims For Breach Of Fiduciary Duty Against Torch, Crossed Keys and Cha

Defendants ask the court to dismiss plaintiffs' fiduciary duty claim against Torch, Crossed Keys and Cha because only managers owe fiduciary duties under Delaware law.  Plaintiffs argue that "controlling members" such as Crossed Keys, and "high level officers" such as Cha, owe fiduciary duties.

Under Delaware law, "managers of a Delaware limited liability company owe traditional fiduciary duties of loyalty and care to the members of the LLC." William Penn P'ship v. Saliba, 13 A.3d 749, 756 (Del. 2011).  Delaware case law has recognized that a person who is not named or designated as a manager in the operating agreement may be deemed a de facto manager and fiduciary of the LLC.  Tiple H Family Ltd. P'ship v. Neal, No. CV 12294-VCMR, 2018 WL 3650242, at *14 (Del. Ch. July 31, 2018).  Absent provisions in the LLC agreement which disclaim

-13-

fiduciary duties, active, controlling members in a manager-managed LLC owe minority members the traditional fiduciary duties that controlling shareholders owe minority shareholders. In re Atlas Energy Resources, LLC, No. CIV.A. 4589-VCN, 2010 WL 4273122, at *7 (Del. Ch. Oct. 28, 2010). Controlling members are "typically defined as shareholders who have voting power to elect directors, cause a break-up of the company, merge the company with another, or otherwise materially alter the nature of the corporation and the public shareholder's interests." Kelly v. Blum, No. CIV.A. 4516-VCP, 2010 WL 629850, at *12 (Del. Ch. Feb. 24, 2010).

Plaintiffs argue that Crossed Keys was a fiduciary because it owned 90 per cent of Torch and Crossed Keys and Weaver unilaterally decided to merge the two companies and determined the worth of plaintiffs' shares. Id. at *12. Plaintiffs have sufficiently alleged that Crossed Keys was an active, controlling member and owed fiduciary duties to the company.

Plaintiffs argue that Cha was a de facto manager because he met with representatives for plaintiffs before plaintiffs agreed to invest in Torch, and Torch's website described Cha as a "Co-Founder and Chief of Innovation" of Torch and stated that he was intimately involved in the direction and vision of Torch. Based on these allegations, plaintiffs have sufficiently pled that Cha exhibited the requisite control over Torch to serve as a de facto manager of Torch. See Triple H Family Ltd. P'ship, 2018 WL 3650242, at *15 (extensive involvement in management and decision-making processes constitutes de facto management). Thus, the Court overrules defendants' motion as to Crossed Keys and Cha. Defendants seek to dismiss a fiduciary claim against Torch, but plaintiffs have not asserted such a claim and its motion is moot as to Torch.

B.    Whether The Operating Agreement Eliminates A Manager's Fiduciary Duties

Defendants argue that the operating agreement eliminates liability for a breach of fiduciary duty by managers like Weaver.

Under Delaware law, "[a] limited liability company agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a member [or] manager . . . provided, that a limited liability company agreement may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing." 6 Del. C. § 18-1101(e).

Section 4.5 of the operating agreement limits a manager's personal liability for breach of fiduciary duties.  It states that no manager is liable for monetary damages for breach of fiduciary duty, except for liability for any acts or omissions which involve intentional misconduct, fraud or knowing violation of law or for a distribution, redemption or purchase of or with respect to a member's membership interest in violation of applicable law as a result of the willful or grossly negligent act of omission of such manager.  Plaintiffs allege that defendants intentionally and unilaterally engaged in misconduct under Sections 4.11 and 5.4 of the operating agreement by circumventing the voting requirements to cancel their interests and avoid paying the actual value of their shares.  Section 4.5 does not exonerate Crossed Keys, Weaver and Cha from liability for intentional misconduct.  Thus, the Court overrules defendants' motion as to the elimination of liability under Section 4.5.

C.      Whether Defendants Owe A Fiduciary Duty To Produce Books And Records

Plaintiffs claim that Crossed Keys, Weaver and Cha breached their fiduciary duties by failing to disclose Torch's books and records.  Defendants argue that Weaver did not owe plaintiffs a fiduciary duty to produce books and records because the right to review books and records does not exist under Delaware law.  Plaintiffs argue that defendants' failure to produce the books and records constitutes a breach of fiduciary duties because defendants were acting in their own self-

interest.

In support of their breach of fiduciary duty claim for failure to provide books and records, plaintiffs cite 6 Del. C. § 18-305(b), which states that "[e]ach manager shall have the right to examine all of the information described in subsection (a) of this section for a purpose reasonably related to the position of the manager." Subsection (a) describes a manager's right to obtain the following information: the status of the business and financial condition of the LLC, a copy of the LLC's federal state and local income tax returns and other information regarding the affairs of the limited liability company as is just and reasonable. 6 Del. C. § 18-305(a). As noted, however, "[a]ny action to enforce any right arising under" Section 18-305 must be pursued in the Court of Chancery of Delaware. 6 Del. C. § 18-305(f). Plaintiffs again fail to address this issue.[3] Thus, the Court sustains defendants' motion as to alleged breach of fiduciary duty to produce books and records.

D.    Whether Defendants Owe A Fiduciary Duty With Respect To The Merger

Plaintiffs claim that Crossed Keys, Weaver and Cha breached their fiduciary duties by depriving them of the fair value of their ownership interest when Torch merged with Crossed Keys. Defendants argue that the merger did not violate any fiduciary duties because the operating agreement does not prohibit mergers and plaintiffs' claim is a repackaged breach of contract claim.

Under Delaware law, subject to narrow exceptions, "a plaintiff may not 'bootstrap' a breach of fiduciary duty claim into a breach of contract claim merely by restating the breach of

---

[3]    Plaintiffs state that "[d]efendants have not cited to a single case in which similar facts were found not to support a fiduciary claim." Pls. Resp. Br. at 24. Plaintiffs only cite William Penn P'ship v. Saliba, 13 A.3d 749, 756 (Del. 2011), which held that defendants breached fiduciary duties because they acted in their own self-interest by selling an asset on terms that were favorable to them. This case provides support for plaintiffs' breach of fiduciary duty claim with respect to the merger, but it does not support imposing a fiduciary duty to provide books and records.

contract claim as a breach of fiduciary duty." Backer v. Palisads Growth Capital II, L.P., 246 A.3d 81, 109 (Del. 2021).  In that context, fiduciary claims which arise out of identical underlying conduct or nucleus of operative facts as the contract obligations, or which involve remedies that are likely to be equivalent, may be foreclosed as superfluous.  Nemec v. Shrader, 991 A.2d 1120, 1129 (Del. 2010).

In support of their breach of fiduciary duty claim, plaintiffs allege that the merger violated defendants' duties because it was a self-interested transaction that wrongfully eliminated plaintiffs' interests.  Plaintiffs allege that in the process of merging Crossed Keys and Torch, defendants breached Sections 2.5, 4.10, 4.11, 5.4 and 7.2 of the operating agreement.  The Court has dismissed plaintiffs' contract claims which relate to Sections 2.5, 4.10 and 7.2.  Plaintiffs' remaining contract claims cover the following alleged facts: (1) defendants repeatedly attempted to purchase their interests, and after plaintiffs rejected their requests, Torch and Crossed Keys initiated a merger to circumvent the voting requirements in the operating agreement; (2) defendants cancelled plaintiffs' interests in Torch and paid them $1,174,133.02 and $180,114.98 for their interests without receiving a unanimous vote.  Plaintiffs also allege that (1) defendants refused to produce Torch's books and records to advance their self-interests; (2) Deloitte valued Torch at over $130,000,000 but plaintiffs only received $1,174,133.02 and $180,114.98 for their ten per cent interest and (3) defendants did not disclose how they arrived at the specific payout amount for plaintiffs' interests.

Plaintiffs' breach of fiduciary duty claim as to the merger is not necessarily superfluous. Their fiduciary duty claim is broader and encompasses the alleged self-interested and deceptive nature of defendants' actions.  Backer, 246 A.3d at 109 (subject matter of contract claim that somewhat overlapped with equitable relief not sufficient to find "bootstrapping").  Thus, the Court

overrules defendants' motion as to plaintiffs' breach of fiduciary duty claim.

## III.    Conspiracy To Breach Fiduciary Duty

Plaintiffs claim that Crossed Keys, Weaver and Cha conspired to breach their fiduciary duties to plaintiffs by acting in concert to conceal information and deprive plaintiffs of the fair value of their ownership interests in Torch.  Defendants argue that plaintiffs do not state a plausible claim for conspiracy because (1) non-managers cannot be held liable for conspiracy to breach obligations that do not exist and (2) the operating agreement eliminates the managers' fiduciary obligations.

A claim for conspiracy to breach fiduciary duties requires (1) the existence of a fiduciary relationship; (2) breach of the fiduciary's duty; (3) knowing participation in that breach by a party not in direct fiduciary relationship; and (4) damages resulting from the conspiring parties' actions. Gilbert v. El Paso Co., 490 A.2d 1050, 1057 (Del. Ch. 1984).

As stated above, plaintiffs have sufficiently pled that Cha was a de facto manager with fiduciary duties, Crossed Keys was a controlling member with fiduciary duties and Weaver was a manager with fiduciary duties.   Thus, plaintiffs have sufficiently pled that Cha, Crossed Keys and Weaver had fiduciary relationships with plaintiffs.   Further, as stated above, the operating agreement does not exonerate Cha, Crossed Keys or Weaver from liability for intentional misconduct.  Therefore, the Court overrules defendant's motion to dismiss plaintiffs' claim for conspiracy to breach fiduciary duties.

## IV.    Unjust Enrichment

Plaintiffs claim that all defendants were unjustly enriched by squeezing out plaintiffs and acquiring their membership interests in Torch at a grossly undervalued amount.  Defendants argue that plaintiffs do not state a plausible claim for unjust enrichment because (1) plaintiffs cannot

pursue an unjust enrichment claim if a valid contract defines the parties' rights and (2) plaintiffs do not plead the elements of an unjust enrichment claim.  Plaintiffs argue that they are permitted to plead unjust enrichment as an alternative to their contract claims because the better claims may possibly become foreclosed.

Plaintiffs may plead unjust enrichment in the alternative to a breach of contract claim when there is doubt surrounding the enforceability or the existence of the contract.  Khushaim v. Tullow Inc., No. CV N15C-11-212-PRW, 2016 WL 3594752, at *8 (Del. Super. Ct. June 27, 2016).  As between plaintiffs and Crossed Keys, the record reveals no issue whether the operating agreement is unenforceable or nonexistent. Because Crossed Keys signed the operating agreement and it does not dispute the existence or enforceability of the agreement, the Court sustains defendants' motion to dismiss plaintiffs' unjust enrichment claim against it.  The Court declines to dismiss the claims as to Torch, Weaver and Cha because the record reveals an issue whether the operating agreement governed plaintiffs' relationships with them.  Accordingly, plaintiffs should be allowed to pursue alternative theories of relief at this stage.  The Court overrules defendants' motion to dismiss plaintiffs' unjust enrichment claim as to Torch, Weaver and Cha.

## V.     Fraud

Plaintiffs claim that all defendants committed fraud by inducing them to invest in Torch while knowing that they would later oust them from the company, concealing important valuations of the company and failing to appoint an independent commission to evaluate the merger. Defendants argue that plaintiffs do not state a plausible fraud claim because (1) plaintiffs did not satisfy the heightened pleading standard in Rule 9(b); and (2) plaintiffs fail to state a claim for fraudulent concealment.  Plaintiffs argue that the particularity requirement is applied differently in the concealment context, defendants could not lawfully carry out the merger without plaintiffs'

approval, and they would not have given their approval if they had seen the documents which defendants withheld.

Under Delaware law, a common law fraud claim requires (1) a false representation by defendant; (2) defendant's knowledge or belief that the representation was false, or reckless indifference to the truth; (3) an intent to induce plaintiff to act or to refrain from acting; (4) plaintiff's action or inaction in justifiable reliance upon the representation; and (5) causally related damages to plaintiff.  Vichi v. Koninklijke Philips Electronics, N.V., 85 A.3d 725, 773 (Del. Ch. 2014).  Fraud may also occur through deliberate concealment of material facts.  Id. at 773–74.

Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To survive a motion to dismiss, an allegation of fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Plastic Packaging Corp. v. Sun Chem. Corp., 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001).  In other words, plaintiffs must set out the who, what, where and when of the alleged fraud.  Id.  A complaint that completely fails to mention an element of the misrepresentation is insufficient to satisfy Rule 9(b).  Koch v. Koch Industries, Inc., 203 F.3d 1202, 1236 (10th Cir. 2000).  For a fraudulent concealment claim, plaintiffs should allege with particularity any facts that would have prevented them from knowing the concealed facts and that their ignorance was not the result of their own lack of diligence.  Near v. Crivello, 673 F. Supp. 2d 1265, 1280 (D. Kan. 2009).

Plaintiffs first allege that defendants fraudulently induced them into investing in Torch while knowing that defendants would later oust them from the company.  Plaintiffs allege the following facts surrounding the fraudulent inducement: (1) in 2017, Weaver and Cha travelled to

Dallas County, Texas and requested capital from plaintiffs to create Torch; and (2) at that time, defendants knew that they would ultimately oust plaintiffs "one way or another" and concealed this intent to attain the needed capital investment from plaintiffs. Plaintiffs allege that by hiding their intent to oust them, defendants fraudulently concealed material information from plaintiffs. Plaintiffs have identified the time, place and contents of the alleged fraudulently concealed information. Thus, the Court overrules defendants' motion as to plaintiffs' fraud claim regarding fraudulent inducement.

Plaintiffs allege that defendants committed fraud by fraudulently withholding books and records after "plaintiffs made numerous attempts to acquire information that would be necessary for them to make informed decisions about the way ahead for Torch." Specifically, plaintiffs allege that defendants refused to provide the Deloitte valuation that estimated Torch's worth at $130 million and that they would not have approved the merger transaction if they had received the valuation and been able to vote on the merger. Plaintiffs also allege that concealing the valuation was fraudulent because defendants hid the information to avoid paying plaintiffs the actual value of their share interests. Plaintiffs do not allege reliance other than stating the following in their complaint: "Obviously, Plaintiffs reasonably relied on Defendants' representations and/or omissions." Complaint (Doc. #1) filed November 16, 2021 at 18. However, they did not allege any action or inaction taken in reliance upon the alleged fraudulently concealed information. Thus, the Court sustains defendants' motion as to plaintiffs' fraud claim regarding defendants' failure to provide Torch's books and records.

Plaintiffs allege that defendants committed fraud by failing to appoint an independent commission to evaluate the merger. They do not plead any false representation or fraudulent concealment with regard to the independent commission, or reliance. Thus, the Court sustains

defendants' motion as to plaintiffs' fraud claim regarding defendants' failure to appoint an independent commission. <u>Koch</u>, 203 F.3d at 1237 (complaint that fails to mention element of Rule 9(b) is insufficient).

**IT IS THEREFORE ORDERED** that <u>Defendants' Motion To Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6)</u> (Doc. #14) filed January 26, 2022 is **SUSTAINED in part.**

The Court dismisses the following claims: (1) that Torch, Weaver and Crossed Keys breached  Section 2.5 by failing to let plaintiffs inspect Torch's books and records, (2) that Torch, Weaver and Crossed Keys breached Section 4.10 by serving plaintiffs an electronic meeting notice rather than personal or mail notice, (3) that Torch, Weaver and Crossed Keys breached Section 7.2 by effectuating a merger that was not fair to them or the company, (4) that Crossed Keys, Weaver and Cha breached their fiduciary duties by failing to disclose Torch's books and records, (5) that Crossed Keys was unjustly enriched by squeezing out plaintiffs and acquiring their membership interests in Torch at a grossly undervalued amount (6) that defendants committed fraud by concealing important valuations of the company and (7) defendants committed fraud by failing to appoint an independent commission to evaluate the merger.

The following claims remain in the case: (1) that Torch, Weaver and Crossed Keys breached Section 4.11 of the operating agreement because they made a capital expenditure over $50,000 without putting the decision to a vote of all members, (2) that Torch, Weaver and Crossed Keys breached Section 5.4 of the operating agreement because they transferred plaintiffs' share interests without the consent of all members, (3) that Crossed Keys, Weaver and Cha breached their fiduciary duties by depriving plaintiffs of the fair value of their ownership interest when Torch merged with Crossed Keys, (4) that Crossed Keys, Weaver and Cha conspired to breach

their fiduciary duties to plaintiffs by acting in concert to conceal information and deprive plaintiffs of the fair value of their ownership interests in Torch, (5) that Torch, Weaver and Cha were unjustly enriched by squeezing out plaintiffs and acquiring their membership interests in Torch at a grossly undervalued amount and (6)  that defendants fraudulently induced them into investing in Torch while knowing that defendants would later oust them from the company.

Dated this 24th day of May, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge