UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANDES CAPITAL FINANCING LLC,
et al.,

      Plaintiffs,

      v.

CROSSED KEYS LLC, et al.,

      Defendants.

Case No. 21-1270-KHV-RES

**MEMORANDUM AND ORDER**

This case is a shareholder dispute over a squeeze-out merger in which the parties dispute the appropriate temporal scope of certain discovery requests. Plaintiffs Andes Capital Financing LLC ("Andes") and Coevolution LLC ("Coevolution") (collectively, "Plaintiffs") move to compel Defendants to fully respond to certain interrogatories and requests for production ("RFP") to include certain post-merger documents and information. ECF No. 58. Defendants Crossed Keys LLC ("Crossed Keys"), Brian Weaver ("Weaver"), Jae Cha ("Cha") and Torch Research LLC ("Torch") (collectively, "Defendants") oppose the motion on the grounds that the requested discovery is not relevant or proportional to the needs to the case.

For the reasons explained below, Plaintiffs' motion to compel is granted in part and denied in part.

**I.    BACKGROUND**

According to the complaint, Torch "is a leading global artificial intelligence (AI) firm that uses machine learning to enable massively scaled, ultra-high performance data processing." ECF No. 1 at 3, ¶ 11. Defendant Crossed Keys is the 90 percent majority shareholder of Torch, with

Plaintiffs Andes and Coevolution owning the remaining 10 percent. *Id.* at 1, ¶ 3. Defendant Weaver is a manager, board member, and CEO of Torch, and he is also the owner and manager of Defendant Crossed Keys. *Id.* at 1-2, ¶ 4. Plaintiffs contend that in 2017, Weaver needed capital to keep the business alive and reached out to Plaintiffs to secure the funds to start the entity that is now Torch. *Id.* at 3, ¶ 12. Plaintiffs agreed to provide the capital, and, in exchange, the parties entered into the Operating Agreement of Torch Research LLC (the "Operating Agreement"), establishing certain rights and duties among the parties. *Id.* at 3-4, ¶ 13.

According to the complaint, Weaver began searching for prospective purchasers of Torch without Plaintiffs' knowledge or consent, which included Torch engaging Deloitte Touche Tohmatsu Limited to produce a report that ultimately valued Torch at over $130 million. *Id.* at 4, ¶¶ 17-18. Highly summarized, Plaintiffs contend that both before and after receiving the valuation, Defendants attempted to purchase Plaintiffs' shares or otherwise oust Plaintiffs at a fraction of the true value of their 10 percent ownership interest in Torch while also keeping Plaintiffs from reviewing Torch's books and records. *Id.* at 4-7, ¶¶ 19-28.

In September 2020, Defendants sent notice of a meeting regarding approval of a proposed merger of Torch with and into Crossed Keys, which would result in the cancelation of Plaintiffs' membership interests in Torch. *Id.* at 7, ¶¶ 29-30. Plaintiffs contend that both the meeting and proposed merger violated the Operating Agreement and they did not attend the meeting. *Id.* at 9-10, ¶¶ 35-40. Weaver presided over the meeting approving the merger, and Defendants filed the merger documents with the Delaware Secretary of State that same day—October 9, 2020. *Id.* at 10, ¶ 39. According to Plaintiffs, Defendants unilaterally concluded that their shares were worth only $1,354,248, contrary to the prior valuation. *Id.* at 10-11, ¶ 40.

Plaintiffs assert that Defendants breached various provisions of the Operating Agreement, breached and conspired to breach fiduciary duties, were unjustly enriched and defrauded Plaintiffs out of the true value of their investment in Torch via what they contend was an improper squeeze-out merger. On May 25, 2022, the District Judge granted in part and denied in part Defendants' motion to dismiss. *See Andes Cap. Fin. LLC v. Crossed Keys LLC*, No. CV 21-1270-KHV, 2022 WL 1658861 (D. Kan. May 25, 2022). The Court summarized the remaining claims in the case as follows:

> The following claims remain in the case: (1) that Torch, Weaver and Crossed Keys breached Section 4.11 of the operating agreement because they made a capital expenditure over $50,000 without putting the decision to a vote of all members, (2) that Torch, Weaver and Crossed Keys breached Section 5.4 of the operating agreement because they transferred plaintiffs' share interests without the consent of all members, (3) that Crossed Keys, Weaver and Cha breached their fiduciary duties by depriving plaintiffs of the fair value of their ownership interest when Torch merged with Crossed Keys, (4) that Crossed Keys, Weaver and Cha conspired to breach their fiduciary duties to plaintiffs by acting in concert to conceal information and deprive plaintiffs of the fair value of their ownership interests in Torch, (5) that Torch, Weaver and Cha were unjustly enriched by squeezing out plaintiffs and acquiring their membership interests in Torch at a grossly undervalued amount and (6) that defendants fraudulently induced them into investing in Torch while knowing that defendants would later oust them from the company.

*Id.* at *11. Plaintiffs ask the Court to rescind the merger, or alternatively, to award Plaintiffs compensatory and punitive damages. ECF No. 1 at 13, ¶¶ 51-52; *id.* at 20, ¶ 88.

The present dispute centers around the appropriate temporal scope for Plaintiffs' Interrogatories Nos. 2, 3, 7 and 9 and for Plaintiffs' Request for Production ("RFP") Nos. 3, 4, 5, 8, 9, 10 and 11, served on Defendants on March 3, 2022. The Interrogatories ask Defendants to identify: persons involved in soliciting funds for Torch or any predecessor entity owned by Weaver (Interrogatory No. 2); persons or entities involved in business strategy and planning for Torch or

3

in preparing business forecasts and valuation-related information for Torch (Interrogatory No. 3); persons or entities with which Defendants communicated regarding a potential sale or investment in Torch (Interrogatory No. 7); and entities that received information about Torch's potential value, technology, business plans or a potential investment in Torch (Interrogatory No. 9). *See generally* ECF No. 58-1. The RFPs seek documents reflecting the solicitation of funds in Torch or its predecessors (RFP No. 3); communications reflecting business planning, forecasts, and valuations related to Torch or its predecessors (RFP No. 4); actual business forecasts, valuations and business plans (RFP No. 5); communications about the planning and execution of the merger (RFP No. 8); communications about the sale of or investment in Torch (RFP No. 9); communications about the drafting of merger documents or related to the cancelation of Plaintiffs' ownership interests (RFP No. 10); and communications showing Torch's potential value (RFP No. 11). *See generally* ECF No. 58-2. The RFPs and the Interrogatories all sought responsive information and documents "to date." ECF Nos. 58-1, 58-2.

Defendants responded to the discovery requests on April 1, 2022. Defendants agreed to provide information and/or produce documents from January 1, 2017, through October 9, 2020, from the approximate time of Plaintiffs' investment in Torch through only the date of the merger. ECF No. 59 at 3. Defendants relied largely on relevance and proportionality objections, with the exception of RFP Nos. 8 and 10. *See generally* ECF Nos. 58-1 & 58-2. As to RFP Nos. 8 and 10, Defendants objected to the extent the RPFs "call[] for information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection." ECF No. 58-2 at 5, 6. Defendants did not assert an undue burden objection as to any of the discovery requests. *See generally* ECF Nos. 58-1 & 58-2.

4

The parties met and conferred regarding Defendants' responses. After extending the D. Kan. Rule 37.1(b) deadline for raising issues with the Court concerning Defendants' responses to these discovery requests, the parties emailed the Magistrate Judge's chambers on May 31, 2022, to state that they had "worked through a number of concerns" and "there remains one issue currently unresolved and which the parties are now requesting a discovery conference. Specifically, the parties disagree over the relevant time period for discovery in this case." Plaintiffs continue to seek discovery through the present day and Defendants contend that the period should end on October 9, 2020, the day of the merger.

On June 3, 2022, the Court held a discovery conference regarding this dispute and directed the parties to further meet and confer following the preliminary feedback provided by the Court during the conference call. *See* ECF No. 56. Because the parties represented that they had thoroughly conferred pursuant to Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2, both before and following the discovery conference and were well aware of each other's respective positions, the Court ordered simultaneous briefing to facilitate a prompt ruling.[1] *See generally id.* Those briefs are now before the Court.

---

[1] Plaintiffs' motion is timely under D. Kan. Rule 37.1(b). Specifically, the Court granted in part and denied in part Plaintiffs' *unopposed* motion for an extension of time, extending the Rule 37.1(b) deadline to May 31, 2022, for Plaintiffs to raise issues with the Court concerning Defendants' April 1, 2022 discovery responses. ECF No. 46. Plaintiffs timely requested a discovery conference in compliance with the Court's order, and the Court imposed a deadline for briefing this issue. During the discovery conference and in their brief, Defendants note that Plaintiffs were aware since April 1, 2022, that Defendants objected to a temporal scope that included post-merger documents. But in the discovery conference, Defendants conceded that these issues were timely raised by Plaintiffs.

To the extent that Defendants' footnote 1 again suggests that Plaintiffs were dilatory, the Court rejects this argument for the same reasons. Defendants could have but did not oppose Plaintiffs' request for a 45-day extension of the D. Kan. Rule 37.1(b) deadline because the parties were continuing to meet and confer about Defendants' April 1, 2022 responses and objections.

## II.     LEGAL STANDARD

The scope of discovery encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). A party moving to compel discovery bears the initial minimal burden to establish the relevance of the requested discovery. *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2019 WL 4466903, at *2 (D. Kan. Sept. 18, 2019) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.") (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to the 2015 amendment (making clear that the amendment adding the proportionality calculation does not alter the parties' responsibilities in raising a discovery dispute or supporting objections and that the burdens "remain as they have been since 1983."). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (finding the *Oppenheimer* standard still relevant after the 2015 amendments to Rule 26(b)(1)).

When the requested discovery appears relevant on its face or the discovering party has established relevance, the party objecting to the discovery bears the burden to support its objections. *Beaty v. Kansas Athletics, Inc.*, No. CV 19-2137-KHV, 2020 WL 1862563, at *3 (D. Kan. Apr. 14, 2020); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG,

---

ECF No. 45 at 2 (detailing the parties' meet-and-confer efforts and noting that Defendants did not oppose the requested extension).

2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request."); *Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (explaining that the party resisting discovery bears the burden to show why a discovery request is improper). "The party resisting discovery does not satisfy this burden by asserting conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome or overly broad" but must instead show how "despite the broad and liberal construction afforded by the federal discovery rules, each discovery request is objectionable." *Beaty*, 2020 WL 1862563, at *3.

### III.   PLAINTIFFS' THRESHOLD SHOWING OF RELEVANCE[2]

Plaintiffs easily meet their initial minimal burden to establish the relevance of the requested discovery. In their brief, Plaintiffs explain that post-merger discovery is relevant for two reasons. *First*, Plaintiffs contend that the discovery is relevant to Defendants' planning and execution of the cash-out merger, and *second*, Plaintiffs contend that the discovery is relevant to Torch's valuation, which goes to Plaintiffs' damages stemming from the merger.

As to the first stated reason, Plaintiffs explain that they allege that Defendants were pursuing other companies to invest in Torch while planning to move forward with the cash-out merger. According to Plaintiffs, discovery has suggested that the investor Torch secured likely conditioned its investment on Plaintiffs' removal from Torch. Because of this, Plaintiffs argue

---

[2] The parties' briefs largely address the Interrogatories and RFPs collectively without distinguishing among the disputed discovery requests. In the absence of specific discussion about individual interrogatories and RFPs, this order addresses the discovery requests in the same fashion while noting that not all arguments necessarily apply equally to all of the disputed discovery requests and objections.

that post-merger communications are germane to Defendants' intent. At the discovery stage of the case, the Court cannot say that this information would have no possible bearing on the claims, particularly in light of the remaining claims, which include—among other things—that Defendants both breached and "conspired to breach their fiduciary duties . . . by acting in concert to conceal information and deprive plaintiffs of the fair value of their ownership interests in Torch" and that Defendants fraudulently induced Plaintiffs into investing in Torch "while knowing that [they] would later oust them from the company." *Andes*, 2022 WL 1658861 at *11 (summarizing remaining claims and legal theories after ruling on Defendants' motion to dismiss). Plaintiffs have established relevance for this stated reason.

The Court also finds that Plaintiffs have established the relevance of the requested discovery as to Plaintiffs' damages, which could include the value of rescissory damages determined by comparing the value of Plaintiffs' investment at the time of the merger with Torch's theoretical value at various points in time until judgment. As Plaintiffs explain, post-merger documents could help Plaintiffs establish Torch's post-merger value and would therefore be relevant for this purpose. In sum, Plaintiffs have articulated why the requested discovery could reasonably bear on their claims and damages sufficient to make a threshold showing of relevance. *See Beaty*, 2020 WL 1862563, at *3 (explaining that given the broad construction of relevance on a motion to compel in that disallow discovery if "it is clear that the information sought can have no possible bearing on the claim or defense of a party"). Because of this, the burden shifts to Defendants to support their objections. *See id*.

## IV.   DEFENDANTS' OBJECTIONS

When ruling on objections to discovery requests, the Court "considers only those objections initially asserted in response to the discovery request and relied upon in response to the

8

motion [to compel]." *Steven Volkswagen, Inc. v. Zurich Am. Ins. Co.*, No. 19-1161-JWB-ADM, 2019 WL 6310186, at *3 (D. Kan. Nov. 25, 2019) (citing *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1256 (D. Kan. 2008)). The Court deems objections waived if they were not initially asserted in response to a discovery request unless the objecting party shows good cause for the failure. *Id.* (citing *White*, 586 F. Supp. 2d at 1256). In this case, the Court understands Defendants' brief as continuing to rely on relevance and proportionality objections. Although Defendants raise arguments concerning undue burden in their brief, the Court construes these as falling under the proportionality objection insofar as Defendants did not assert a stand-alone undue burden objection when they initially responded to the discovery requests. *See generally* ECF Nos. 58-1 and 58-2.

Although not addressed by the parties, Defendants did not assert a relevance or proportionality objection as to RFP Nos. RFP Nos. 8 and 10, although they rely on these objections in their brief.[3] While the Court could properly find the objections waived as to these RFPs, it is

---

[3] Defendants' response to RFP No. 8 states:

> Defendants object to this Request to the extent it calls for information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection.
>
> Defendants will conduct a reasonable search and will produce responsive, non-privileged documents, to the extent any exist, reflecting communications with the person and entity identified in Defendants' Response to Interrogatory No. 6 concerning the merger of Torch Research, LLC into Torch Merger, LLC.

ECF No. 58-2 at 5. Defendants' response to RFP No. 10 states:

> Defendants object to this Request to the extent it calls for information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection. Defendants will conduct a reasonable search and will produce responsive, non-privileged documents, to the extent any exist,

disinclined to so for two reasons. *First*, Plaintiffs did not raise the issue of waiver during either the June 3, 2022 discovery conference or in their brief, and Plaintiffs have represented they have thoroughly conferred with Defendants. If that is accurate, the Court would expect Plaintiffs to be well apprised of the nature of Defendants' objections and unsurprised by their position now. *Second*, the Court has an independent obligation to ensure that discovery is proportional, so addressing these specific types of objections is within the Court's discretion, particularly where the objections concerning the appropriate temporal scope apply equally to multiple discovery requests and were properly preserved as to the bulk of those requests. *See generally* Fed. R. Civ. P. 26(b)(1) (defining the scope of discovery); *see also Ad Astra*, 2019 WL 4466903, at *3 (relying on Fed. R. Civ. P. 26(b)(2)(C)(iii) to conclude that the court has an independent obligation to sua sponte consider proportionality). But even considering the merits of these objections, the Court still finds that they should be largely overruled with some limited exceptions.

### A. Relevance Objections

As discussed above, because Plaintiffs have met their burden to make the threshold showing of relevance required by the Federal Rules, Defendants bear the burden to support their relevance objection. Defendants concede that "some post-merger materials may be discoverable" in that the material could bear on Plaintiffs' alleged damages (although Defendants generally disagree that rescissory damages are an appropriate measure of damages in this case). ECF No. 59 at 5. Nevertheless, Defendants dispute that the remainder of the documents and information are relevant to either the issue of Plaintiffs' damages or to the issue of Defendants' intent in

---

reflecting communications with the entity identified in Defendants' Response to Interrogatory No. 8 related to the drafting of the merger documents.

*Id.* at 6.

executing the cash-out merger. For the reasons explained below, the Court disagrees and overrules the relevance objection.

As to relevance to damages, Defendants note that they offered to produce non-custodial documents such as stand-alone PDF, PowerPoint and Excel files sufficient to show Torch's post-merger value through the present. They argue that any additional responsive information, such as communications about those financials, would not be relevant to a reliable valuation analysis in that a damages expert would reasonably rely on the financials themselves, not hearsay statements about the financials.[4] But the fact that some discovery may ultimately be more relevant or reliable to prove an issue—and therefore more likely to be relied upon by an expert—does not render the material irrelevant. This is particularly true given that Plaintiffs also contend that Defendants' communication about Torch's valuation could help establish Defendants' intent, discussed further below. In other words, the Court does not evaluate relevance in a vacuum. The fact that responsive documents may arguably be more relevant for one stated purpose than another is not sufficient to sustain a relevance objection so long as the requested discovery is relevant for at least some

---

[4] Defendants cite case law from the Delaware Court of Chancery for its proposition that post-merger evidence may be relevant only to assess, in the context of valuation, the validity of management projections pre-merger. ECF No. 59 at 6 (citing *In re PetSmart, Inc.*, No. CV 10782-VCS, 2017 WL 2303599, at *20 n.268 (Del. Ch. May 26, 2017); *cf. Cinerama, Inc. v. Technicolor, Inc.*, No. 7129, 1999 WL 135242, at *4 (Del. Ch. Feb. 25, 1999) (holding Delaware law "permit[s] consideration of post-merger evidence that could have been discerned at the time of the merger, but [does] not [] permit consideration of post-merger evidence that was not capable of being known on the date of the merger")). Defendants' citation to the 268th footnote in *PetSmart*, an appraisal action following a private merger, is not persuasive in that the court was simply explaining how it considered the evidence when making a merits determination—not whether the evidence was relevant under the Federal Rules at the discovery phase. The same is true of *Technicolor*, which ruled on a motion to reconsider a prior order appointing an appraisal expert and opined on the court's and the expert's right to consider post-merger evidence—again, not whether such evidence was relevant and discoverable in a civil action in federal court with the types of causes of action alleged in this lawsuit.

permissible purpose. And in this case, Defendants' communications concerning valuation would potentially be more relevant to the issue of intent.

But on this point, Defendants criticize Plaintiffs for their failure "to identify any factual support for the proposition that relevant post-merger communications exist" and characterize Plaintiffs' requests as a mere "fishing expedition" without ever squarely addressing Plaintiffs' arguments concerning relevance as to Defendants' intent. ECF No. 59 at 5. Although it is likely that more communications would exist pre-merger, that does not establish that post-merger communications are either non-existent or irrelevant. It is not Plaintiffs' obligation to come forward with any quantum of proof that responsive documents actually exist where Defendants, who have possession, custody, or control of any such responsive documents, do not assert that such documents do not exist. Particularly in response to Plaintiffs' Interrogatories, Defendants could have stated that there is no additional responsive information from this disputed timeframe, but they did not do so.

Defendants have not overcome Plaintiffs' threshold showing of relevance. As the Court previously found, these types of communications could be potentially relevant to the issue of Defendants' intent, which reasonably bears on Plaintiffs' claims that Defendants both breached and conspired to breach certain fiduciary duties and fraudulently induced Plaintiffs to invest in Torch while knowing that they would later oust Plaintiffs from the company. For these reasons, the Court overrules Defendants' relevance objections.

### B. Proportionality Objections

When evaluating whether the requested discovery is proportional, the Court evaluates six general factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The party asserting a proportionality objection still bears the burden to support the objection. *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 1813395, at *5-6 (D. Kan. Apr. 9, 2020) (citing Fed. R. Civ. P. 26(b)(1) advisory committee's note to the 2015 amendment ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties . . . .")).

Practically speaking, the Court's responsibility is to analyze the information provided by the parties to make a case-by-case determination as to the appropriate scope of discovery. *Id.* (explaining, for example, the objecting party likely has better information regarding the burden or expense of the proposed discovery, whereas the discovering party should be able to articulate how the requested discovery could be important to resolving the issues in the case). No one factor outweighs any other factor, and the Court need not address every factor in the absence of arguments from the parties. *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 2448569, at *4 (D. Kan. June 12, 2019).

In this case, the above six factors show that the bulk of the requested discovery—with the limited exceptions discussed below—is proportional. *First*, the issues at stake in the case are important, but in the absence of more specific arguments from the parties, the Court declines to find that they are any more or less important than issues at stake in other civil cases. *See generally id.* (reaching the same conclusion in a RICO case where the parties had not specifically addressed this factor); *see also CCA Recordings 2255 Litig. v. United States*, No. 19-CV-2491-JAR, 2020 WL 4284222, at *2 (D. Kan. July 27, 2020) (noting that this factor primarily considers whether the case involves significant public policy or personal rights or public values).

*Second*, the amount in controversy weighs strongly in Plaintiffs' favor. As Plaintiffs note, they had a 10 percent ownership in Torch and have alleged that Torch's pre-merger value could have been as high as $130 million or more and could potentially be higher now. Plaintiffs allege that their "damages likely exceed $20 million," ECF No. 58 at 3, a figure Defendants do not directly dispute.

*Third* and *Fourth*, Defendants have sole access to the information at issue, and Plaintiffs do not, and there is no indication that Defendants have limited resources to gather the requested information and documents. As Plaintiffs note, Defendants have already readily produced the same categories of pre-merger information.

*Fifth*, the Court has already found that the discovery Plaintiffs seek appears relevant, and it appears to have at least some importance in resolving the issues.

That leaves the sixth factor—whether the burden or expense of the proposed discovery outweighs its likely benefit. Defendants state that from the period of January 1, 2017, through October 9, 2020, Defendants collected approximately 229,000 documents, reviewed approximately 13,000 documents, and produced 2,677 documents. As discussed on the telephone conference, Defendants collected custodial documents from only two custodians.

Nowhere in Defendants' brief do they articulate any burden if required to respond to an expanded timeframe for Plaintiffs' interrogatories. Most of the interrogatories require Defendants to identify people and companies who were involved in various aspects of soliciting funds for Torch, valuating Torch or those companies that received information about Torch's potential value. Much, if not all, of this information could be obtained by interviewing employees without the need for full-scale document review. It was Defendants' obligation to come forth with

14

information about the burden in responding to these Interrogatories and Defendants have not met their burden.

With regard to Plaintiffs' document requests, nowhere in Defendants' brief do they estimate any expenses related to producing responsive documents, either for the documents produced to date or for any additional productions if the timeframe were expanded.[5]  As part of the meet and confer process, Defendants "agreed in the spirit of compromise to search for and produce non-custodial documents (*e.g.*, stand-alone PDF files, PowerPoint files, and Excel files) that are sufficient to show the value of Torch after October 9, 2020 through the present, while preserving all objections as to relevance and admissibility." ECF No. 59 at 4.  Defendants do not explain any costs or burden associated with producing responsive non-custodial documents such as stand-alone PDF, PowerPoint and Excel files from an expanded timeframe.

Defendants additionally do not explain any costs associated with collecting documents from two custodians, reviewing those documents or producing any relevant and responsive documents.  While Defendants extrapolate that an expanded timeframe would require "Defendants to roughly double their collection and review effort," ECF No. 59 at 6, Defendants do not provide any factual support to justify their assumption that the core collection will be of similar size or that the same search terms for this expanded timeframe would produce a similar number of documents to review.  Defendants could have, for example, sampled documents from either custodian to justify these estimates, but Defendants provided no such information to the Court to support their

---

[5]  In the telephone conference with the Court, Defendants asked if a separate declaration was necessary to support any allegations of burden or expense.  Defendants were told that a separate declaration was unnecessary, and counsel should instead provide any supporting facts within their brief.  Again, none of this information was provided in their brief.

argument that this expanded timeframe "imposes an undue burden that is disproportionate to the needs of this case." ECF No. 59 at 6.

The fact that Defendants would inevitably expend additional time and resources producing documents does not itself show that the burden of the proposed discovery outweighs its benefit. Notably, 2,677 documents is not a particularly high number in light of the nature of the claims or relative to Plaintiffs' assertion that tens of millions of dollars are at stake. On the whole, Defendants have not shown that post-merger discovery is disproportional, and the above factors weigh in favor of allowing post-merger discovery—with the limits discussed below.

### C. Objections Regarding Custodians, Search Terms and Continuous Supplementation of Custodian-Level Information

Defendants allege that after the telephone conference with the Court, Plaintiffs expressed an expectation that Defendants would add additional custodians and additional search terms beyond those used to produce responsive documents to date, which Defendants contend would necessarily expand the time and money required to produce these documents. ECF No. 59 at 6. Defendants additionally raise concerns that requiring production to date would necessitate multiple ESI collections. The Court agrees that Defendants should not be required to engage in a more expansive search to produce post-merger documents or continuously supplement their ESI productions.

Plaintiffs' belated concerns with the custodians and search terms Defendants have utilized throughout this entire litigation were not timely preserved for the reasons the Court explained during the discovery conference.[6] The Court granted leave for Plaintiffs to file a motion to compel

---

[6] During the June 3, 2022 discovery conference, the Court asked Defendants how many custodians were searched. Defendants responded that in addition to collections from general sources, two custodians were searched, which was apparently a surprise to Plaintiffs. In other words, Plaintiffs had not previously raised this issue and the parties had not previously met and

16

limited to the parties' dispute regarding the appropriate temporal scope. ECF No. 56. To that end, the Court will not require Defendants to expand either their custodians or search terms to search for and produce post-merger documents. To the extent Plaintiffs seek post-merger information that would require Defendants to use additional search terms and additional custodians, the Court sustains Defendants' objection on that basis.

Defendants also argue that a cutoff is necessary for custodian-level information to spare Defendants the burden of continually updating their document production and to protect them from interference with ongoing business relationships. They cite to *Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kansas, Inc.*, No. 19-CV-4007-HLT-TJJ, 2021 WL 1635853, at *4 (D. Kan. Apr. 27, 2021), in which the court simply noted that in an earlier ruling, it imposed a temporal scope ending on the date the plaintiffs had filed an amended complaint. *Orchestrate* does not involve analogous claims or parties, and so the discovery rulings in that case provide limited guidance as to the appropriate scope of discovery here. Conversely, Plaintiffs point to *Sheldon v. Vermonty*, adopting a broader temporal scope in a securities-fraud case as to certain RFPs, noting that a lengthier timeframe "may be relevant to show Defendants' creation of the fraudulent scheme and their ongoing participation in it" and that the documents could "support Plaintiff's claims that

---

conferred about this issue in compliance with D. Kan. Rule 37.2 despite being granted an extension of time to continue meet and confer discussions for months.

As stated at the discovery conference, the Court would have expected the meet-and-confer discussions to include addressing custodians and search terms *at least* by the time a discovery dispute developed—if not from the outset of discovery. *See generally* Initial Order, ECF No. 12, at 4 (explaining that the parties should be prepared to discuss at their planning conference how electronically information is stored and retrieved). The parties were on notice that after exhausting their meet-and-confer efforts, the assigned Magistrate Judge required that they request a discovery conference before filing any disputed discovery-related motion. *See* ECF No. 46. Plaintiffs requested a discovery conference limited to the issue of the appropriate temporal scope, *not* custodians or search terms, and that is the sole issue that the Court has allowed the parties to brief. *See* ECF No. 56.

Defendants knew that the representations they made to Plaintiff in connection with his purchase of the securities were false." 204 F.R.D. 679, 690 (D. Kan. 2001).

The parties' citations simply underscore the Court's authority to issue appropriate orders to ensure proportional discovery given the contours of the claims and defenses in a particular case. They do not suggest a bright-line rule the Court must follow in fashioning the appropriate temporal scope. *See generally Ad Astra*, 2019 WL 4466903, at *3 (explaining the court's ongoing obligation to consider proportionality and hearing a renewed objection articulated in a more targeted and meaningful fashion). Instead, cases like *Orchestrate* acknowledge that, based on the unique facts in that case, a plaintiff might be able to demonstrate "that the time period should be extended until the time of trial." No. 19-4007-HLT-TJJ, ECF No. 92 at 5.

Here, while the Court finds that inquiry into post-merger documents generally may be relevant, the Court agrees that at some point, the burden of continuously updating production of custodial documents outweighs the potential benefits to be gained by this discovery, particularly when the discovery seeks communications after the filing of a lawsuit. As previously discussed, Defendants offered to produce non-custodial documents to show Torch's post-merger valuation but argued that additional custodial documents were not relevant in that they were unlikely to aid Plaintiffs in establishing Torch's value. While the Court overruled that objection generally, as more time elapses since the date of the merger—and the filing of a lawsuit concerning the merger—the less likely it is that additional searches would yield relevant information regarding, for example, the issue of intent. In other words, relevance diminishes while Defendants continue to bear a burden of updating custodial-level production.

On this point and on this record, the Court finds that the discovery would not be proportional as to this limited category of documents. To that end, to ameliorate this burden, the

Court grants Defendants' objection as to any requirement for ongoing document review at the custodian-level beyond May 31, 2022, the day the parties contacted the Court regarding this discovery dispute. Other than sustaining the objection as to these two limited issues, the Court otherwise overrules Defendants' objections.

## V.     CONCLUSION

It is therefore ordered that Plaintiffs' motion to compel (ECF No. 58) is granted in part and denied in part.[7] On or before **July 1, 2022**, Defendants shall serve amended responses to Interrogatories Nos. 2, 3, 7 and 9 and shall respond to RFP Nos. 3, 4, 5, 8, 9, 10 and 11, using the parameters established in this order.

With respect to the RFPs and custodial documents, Defendants need not utilize additional custodians or search terms in identifying responsive ESI, and Defendants are not required to conduct any ongoing custodian-level document review beyond May 31, 2022. With regard to non-custodial documents responsive to the RFPs, Defendants shall search for and produce non-custodial documents (*e.g.*, stand-alone PDF files, PowerPoint files, and Excel files) that are sufficient to show the value of Torch after October 9, 2020, through the present.

**IT IS SO ORDERED.**

Dated June 17, 2022, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge

---

[7] Because the Court has granted in part and denied in part Plaintiffs' motion to compel, it declines to award fees and expenses. *See* Fed. R. Civ. P. 37(a)(5)(C) (stating that the Court "may" but is not required to award fees and expenses in this circumstance).